## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff** | | |
| **v.** | : | **Civil Action No.** |
| | | |
| **REAL PROPERTY KNOWN AS** | : | |
| **5464 MOOSE LODGE ROAD,** | | |
| **CAMBRIDGE, MARYLAND 21613,** | : | |
| **Defendant** | | |

: : : : : : : : :

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by its attorneys, Rod Rosenstein, United States Attorney for the District of Maryland, and Evan T. Shea, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.        This is a civil forfeiture action against real property involved in violations of 21 U.S.C. § 841, 18 U.S.C §§ 1956 and 1957, and 31 U.S.C. § 5324(a), and thus subject to forfeiture pursuant to 21 U.S.C. § 881, 18 U.S.C. § 981, and 31 U.S.C. § 5317(c).

## THE DEFENDANTS IN REM

2.        The Defendant Property consists of the real property known and numbered  as 5464 Moose Lodge Road, Cambridge, Maryland with all appurtenances, improvements, attachments thereon, which are  (hereinafter, the "Defendant Property").

3.        The Defendant Property has not been seized but it is located within this district and within the jurisdiction of the Court. The United States does not request authority from the Court to seize the real property defendant at this time.  The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

1

a. Post notice of this action and copy of the Complaint on the defendant real property; and

b. Serve notice of this action on the defendant real property owner, and any other person or entity who may claim an interest in the defendant, along with a copy of this complaint; and

c. If necessary, execute a writ of entry for purpose of conducting an inspection and inventory of the property; and

d. File a lis pendens in county records of the Defendant Property's status as a defendant in this in rem action.

The United States will also, as provided in 19 U.S.C. § 1606, appraise the defendant real property when and if it executes the Writ of Entry.

## JURISDICTION AND VENUE

4.          Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. §881, 18 U.S.C. § 981, and 31 U.S.C. § 5317(c)(2).

5.          This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

6.          Venue is proper in this district pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

7.          The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it is real property that was used or intended to be used, in any manner or part, to commit,

2

or to facilitate the commission, of a violation of the Controlled Substances Act punishable by more than on year's imprisonment.

8.        The defendant property is also subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange for a controlled substance.

9.        The Defendant Property is also subject to forfeiture pursuant to 18 U.S.C. 981(a)(1)(A) because it is real property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

10.       The Defendant Property is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) because it is traceable to funds involved in violations of 31 U.S.C. § 5324(a)(3) which makes it an offense to structure currency transactions with a domestic financial institution for the purpose of evading the reporting requirements of 31 U.S.C. § 5313, and the regulations promulgated thereunder.

## FACTS

11.       The forfeiture is based upon, but not limited to, the evidence outlined in the attached Declaration of Sean Fitzpatrick, Special Agent of the Drug Enforcement Administration, which is incorporated herein by reference

**WHEREFORE**, the plaintiff prays as follows:

1.    That any person or persons having any interest therein be cited to appear herein and answer the Complaint;

2.    That a Warrant of Arrest *in rem* issue to the United States Marshal commanding the arrest of the Defendant Property;

3.    That Judgment of Forfeiture be decreed against the Defendant Property;

4. That upon Final Decree of Forfeiture, the United States Marshal dispose of the Defendant Property according to law; and

5. That the plaintiff has such other and further relief as the case may require.


Respectfully submitted,

Rod J. Rosenstein
United States Attorney

5/14/2014
Date

Evan T. Shea
Assistant United States Attorney
36 S. Charles Street
Fourth floor
Baltimore, Maryland 21201
Telephone (410) 209-4800


## VERIFICATION

I, Evan T. Shea, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the facts provided in the foregoing Verified Complaint for Forfeiture is based on reports and information furnished to me by the Drug Enforcement Administration and that everything contained therein is true and correct to the best of my knowledge and belief.

5/14/2014
Date

Evan T. Shea
Assistant United States Attorney

4

### DECLARATION IN SUPPORT OF CIVIL FORFEITURE COMPLAINT AND RESTRAINING ORDER

I, Sean Fitzpatrick, being first duly sworn, hereby depose and state that there are sufficient facts to support a reasonable belief and probable cause that the Defendant Property: (a) is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it is real property that was used or intended to be used, in any manner or part, to commit, or to facilitate the commission, of a violation of the Controlled Substances Act punishable by more than on year's imprisonment; (b) is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to an exchange for a controlled substance; (c) is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is real property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957; and (d) is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) because it is traceable to funds involved in violations of 31 U.S.C. § 5324(a)(3) which makes it an offense to structure currency transactions with a domestic financial institution for the purpose of evading the reporting requirements of 31 U.S.C. § 5313, and the regulations promulgated thereunder. In support, I state the following:

1.  I, Sean Fitzpatrick, am a Special Agent with the Drug Enforcement Administration (DEA). I have been so employed since 1997. I have more than 17 years of experience investigating a wide variety of state and federal criminal offenses. I have received training in all aspects of the investigative process, including (i) search and seizure, and (ii) the use of technology by criminals to commit violations of state and federal law. I am currently assigned to the DEA Salisbury, Maryland Post of Duty, a satellite office of the Baltimore District Office. I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21 of the United States Code.

2.          As part of my employment with DEA, I attended the Basic Agent Training

Program, a 17-week resident program that included academic instruction in the basics of report-

writing, law, firearms, surveillance techniques, interview and interrogation techniques,

automated information systems, drug identification, and defensive tactics, as well as leadership

and ethics.

3.          Your declarant's official responsibilities include conducting investigations of

possible criminal violations of the Bank Secrecy Act (Title 31, United States Code), the Money

Laundering Control Act (Title 18, United States Code), and other related offenses.  I am

empowered by law to investigate and to execute search and seizure warrants, as well as make

arrests, for offenses involving the structuring of currency deposits to evade the reporting

requirements outlined in Title 31 of the United States Code.

4.          Your declarant has successfully completed several training seminars conducted

by the Drug Enforcement Administration and the Department of Justice.  The training included

courses in criminal law, criminal investigative techniques, search and seizure warrants, financial

investigative techniques and money laundering investigations.  Your declarant has developed

additional expertise in the review and analysis of financial information, including the analysis of

bank records while assigned to the DEA Phoenix Field Division Financial Investigations Team

(FIT) for approximately two years.

5.          Your declarant conducted many proactive asset forfeiture investigations of

individuals and businesses involved in the distribution of narcotics.  Your declarant has

participated in numerous state-issued search and seizure warrants resulting in the seizure of U.S.

currency, illegal narcotics, weapons, vehicles, and real property.

6.          The facts contained in this declaration are based on my personal knowledge, as well as that of the other agents involved in this investigation.  All observations that were not made personally by me were related to me by persons with knowledge.  This declaration is intended to show only that there is sufficient probable cause to restrain the defendant property, and sufficient evidence to support a reasonable belief that the government will be able to meet its burden at trial; it does not set forth all of my knowledge about this matter.

7.          As described more fully below, Shannon Banks distributed cocaine in the Cambridge, Maryland, area, and used the Defendant Property to facilitate that distribution, and Scott Brittingham structured and laundered drug proceeds and using those proceeds to build the house on the Defendant Property for Banks.  The investigation has uncovered evidence in the form cocaine and drug paraphernalia at the Defendant Property seized after the execution of a search warrant at the Defendant Property and a storage united used by Banks, and bank records of Brittingham, along with historical evidence of Banks's drug trafficking.

*Drug and Currency Seizures in Texas*

8.          In 2010, law enforcement made two seizures of narcotics and one seizure of currency, and based on the statements of one of the individuals from whom the money and drugs was seized, based on the information below, your declarant believes that the currency and narcotics belonged to Banks's drug trafficking organization.

9.          On June 2, 2010, the Sheriff's Office of Webb County, Texas conducted a traffic stop of a Ford Escape for having an obstructed driver's window just west of the United States Border Patrol (USBP) Freer checkpoint.  During a consent search of the car, the officers found and seized $60,040 in currency, which one of the passengers, Nicholas Parks, claimed to be his.

The other passengers were identified as James Michael Parks, Steven James Parks, and Brandon Lee Carles.

10.        Your declarant also received information that on July 19, 2010, the Sheriff's Office of Webb County, Texas conducted another traffic stop of a Cadillac driven by Carles for crossing the white line at a traffic stop. After a narcotics K-9 alerted to the presence of narcotics, the officers searched the car and found 2.8 kg of cocaine wrapped in black electrical tape in a duffle bag in the trunk of the car. Carles stated that the duffle bag was his.

11.        On October 22, 2010, your declarant and other law enforcement executed an arrest warrant and took Parks and Carles into custody in Federalsburg, Maryland.

12.        After Parks was advised of his *Miranda* rights, Parks provided information regarding his organization's source of narcotics in Texas, but would not provide information regarding the organization's buyers of cocaine in Maryland. Parks admitted to taking weekly trips to Laredo, Texas to purchase approximately 3 kilograms of cocaine each trip. Parks estimated that he took approximately 100 trips to Texas to purchase cocaine.

13.        After Carles was advised of his *Miranda* rights, Carles corroborated the information that Parks provided regarding the drug organization's source of supply in Texas. Carles further stated that Parks worked closely with an individual named Shannon Banks. Carles stated that Banks was a key figure in the distribution of cocaine throughout Maryland, and Carles stated that Banks played a major role in distributing the cocaine obtained by Carles and Parks in Laredo, Texas. Carles stated that Banks provided Parks money to purchase cocaine in Texas on Banks's behalf, and that over half of the currency seized on June 2, 2010 was money that Banks gave Parks for that purpose.

*Kinnamon*

14.        On August 24, 2011, agents executed a search and seizure warrant at the residence of Adam Blake Kinnamon (aka "AK"). Kinnamon has been identified as a drug customer of Banks.

15.        During a search of the residence, law enforcement discovered approximately twelve ounces of cocaine.

16.        After Kinnamon was arrested and read his *Miranda* rights, Kinnamon stated that his main drug source of supply was Banks (aka "Cutter" and "Box Cutter").

17.        Kinnamon further stated that Banks was the largest cocaine supplier in Cambridge, Maryland. Kinnamon stated that he normally purchased two to three ounces of cocaine from Banks at a time for $975 an ounce and had done so since 2003.

18.        Kinnamon estimated that Banks sold up to 3 kilograms of cocaine on a weekly basis.

19.        Kinnamon stated that the cocaine found (12 ounces) at his residence was what was left of the 15 ounces that was provided to him by Banks on a consignment basis on August 15, 2011. Kinnamon was to sell the narcotics and then pay Banks for the narcotics out of the proceeds to him by Banks.

20.        Kinnamon further stated that in 2010 Nicky Parks (believed to be Nicholas Parks, discussed above) was stopped twice while making a trip to purchase cocaine for Banks. Kinnamon stated that the first time, $80,000 was seized from Parks and the second time Parks was arrested while in possession of $80,000 worth of cocaine.

21.        Your Declarant believes, based on my knowledge of this case, that Kinnamon was referring to the two traffic stops of and seizures from Parks described above. Kinnamon

believed that Banks kept his cocaine supply at his residence and has observed a cocaine press in Banks's garage.

22.          Furthermore, Kinnamon stated that Banks kept large amounts, but not all, of his currency at his residence.

*2012 Home Invasion*

23.          On December 24, 2012, individuals attempted a home invasion of 212 Tidewater Drive, Cambridge, Maryland, which was Banks's residence at the time.   The Cambridge Police Department responded to a report of a robbery at that location. According to the Cambridge Police Department, the victim, Banks's girlfriend, was robbed at gunpoint by an unknown black male at that address.

24.          At the time of this incident, Banks was incarcerated on traffic related charges.

25.          The victim was approached by the suspect in the garage of the residence and directed inside. The suspect requested money that the suspect knew was located inside of the residence.

26.          The victim retrieved a shoe box for the suspect that contained approximately $50,000.00 in currency. Shortly after retrieving the currency, the suspect fled on foot and has yet to be identified.

27.          The victim told the Cambridge Police Department that the stolen currency belonged to Banks.

*December 2013 Suspected Attempted Home Invasion of the Defendant Property*

28.          On December 4, 2013, Maryland State Police Troopers from the Easton Barrack ("MSP") and Deputies of the Dorchester County Sheriff's Office ("DCSO") responded to the

Defendant Property to investigate an alleged assault later determined be perpetrated by two or three unidentified individuals against Banks.

29.         Your declarant believes based on my training, experience, and knowledge of this case that that this incident was another home invasion intended to steal narcotics or narcotics proceeds.

30.         Banks informed law enforcement that the assault occurred in the front yard of the Defendant property.

31.         Law Enforcement also learned that Brian Gunner Parker was with Banks at the time of the assault.

32.         Three other individuals were present at the residence; Jennifer Ann Rawding, Kinnamon, and Issac Tyrone Jones when DCSO officers arrived at the crime scene.

33.         All of the individuals interviewed gave inconsistent statements regarding the assault, and failed to cooperate with law enforcement.

34.         Law enforcement observed that Banks had a surveillance system installed at the residence. Banks initially advised he would be able to provide the surveillance footage; however, has not done so.

35.         Banks provided law enforcement with 443-521-0071 as his cellular telephone number.

36.         Deputies from DCSO interviewed Kinnamon about the assault.  Kinnamon stated, "The game paid for the house but they were not in the game anymore."

37.         Your declarant knows, through training and experience, that term "the game" is often used to describe a person's involved in the distribution of illicit drugs.

38.        Furthermore, Kinnamon continued to explain that the individuals who attempted the home invasion may have been attempting to steal a "couple of ounces" from the residence.

39.        Your declarant believes that Kinnamon was referring to a "couple of ounces" of cocaine.

40.        Your declarant believes, based on these statements, and my training, knowledge, and experience, that Kinnamon was only partially telling the truth in an attempt to conceal his and Banks's ongoing criminal activity, and that; in fact, Banks is still dealing drugs out of, and stores drugs and currency in, the Defendant Property.

41.        Law enforcement also learned that Rawding, Kinnamon and Jones were not present during the assault but responded to the residence after learning about the assault.

42.        Your declarant knows based on my training, knowledge, and experience that individuals who commit home invasion robberies often target the homes of other drug traffickers for home invasions due to the fact that drug traffickers often store large sums of cash derived from the illicit drug trade at their residences or "stash" houses.

43.        Your declarant believes, based on training, experience, and knowledge of this case that Banks's involvement in drug trafficking is the reason why his residences have been targeted for home invasion on more than one occasion.

*Banks' Wages*

44.        Maryland Automated Benefits and Wages state that Banks's reported income for the 4th quarter of 2012, 1st and 2nd quarter of 2013 was $11,861.00.  Exotic Sound and Tint (Salisbury, Maryland) was listed as Banks's employer during this time.

*Defendant Property Purchased and Built by Brittingham to Conceal Banks's Interest*

45.         Public records indicate that the Defendant Property was purchased by
Brittingham on October 30, 2012. Furthermore, the Defendant Property was built by
Brittingham, the president of Skylark Management Incorporated ("Skylark"), which has the
listed address of 32383 Longridge Road. A sign posted in the yard of the residence that
displayed "Scotty B Designs" with phone number (410) 726-9110. This is the same number
listed for Skylark Management Incorporated. In addition, on Brittingham's Facebook account,
he has posted several photographs of various phases of construction of the house at the
Defendant Property.

46.         According to Verizon Wireless, telephone number 410-726-9110 is subscribed to
Skylark, with the listed address of 32383 Longridge Road. The account was activated on June
12, 2012, with the contact name of Brittingham's wife. Furthermore, according to Delmarva
Power, the power at the Defendant Property is in the name of Scott W. Brittingham, was
activated on June 14, 2013, the account lists the address of 32383 Longridge Road, and
Brittingham is listed to "contact if problem" at telephone number 410-726-9110.

47.         Toll analysis revealed that telephone number 443-521-0071 (the phone Banks
gave to officers after the December 2013 suspected home invasion) was in contact with
Brittingham a total of 202 times over the period of September 23, 2013 to October 21, 2013.

48.         A number of text messages obtained pursuant to a search warrant reveal
numerous messages in October 2013 from Banks (443-521-0071) to Brittingham (410-726-
9110) discussing construction projects, repairs, and other home improvements, which your
declarant believes relate to activity Brittingham was conducting at the Defendant Property.

49.         Your declarant believes that this is further evidence that Banks is the true owner
of the Defendant Property and he was paying Brittingham drug proceeds to build, repair, and

improve the house on that property.  The intent of these payments was to disguise the nature, location, source, ownership, and control of those proceeds, making the transactions violations of 18 U.S.C. § 1956 (money laundering).

*Structuring*

50.　　　　Title 31, U.S.C. § 5313 and 31 C.F.R. § 1010 of the Bank Secrecy Act ("BSA") require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 to report the transaction to the Internal Revenue Service on the Department of the Treasury's FinCEN Form 104, Currency Transaction Report ("CTR").  These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are by, or on behalf of, the same person, and they result in currency either received or disbursed by the financial institution totaling more than $10,000 during any one business day.

51.　　　　As explained by the Fourth Circuit Court of Appeals in *United States v. Peterson*, 607 F.3d 975 (4th Cir. 2010), structuring can take several forms.  Making multiple deposits of $10,000 or less into the same bank on the same day, with the total exceeding $10,000, is called "imperfect structuring" because the bank's obligation to file a CTR is triggered notwithstanding the customer's intent to evade it.  Making multiple deposits into *different* banks on the same day, with no one deposit exceeding $10,000, but with the total being in excess of that amount, is called "perfect structuring" because no one bank has a duty to file a CTR.  Imperfect structuring is a violation of 31 U.S.C. § 5324(a)(1), and perfect structuring is a violation of 31 U.S.C. § 5324(a)(3).  *Peterson,* 607 F.3d at 981. Not all structuring offenses involve breaking up sums in excess of $10,000 into smaller amounts on a single day.  To the contrary, under 31 C.F.R. 1010.100(xx) a person may commit "serial

structuring" if he or she deposits or withdraws $10,000 or less each day over a period of several

days (or longer) with the intent to evade the reporting requirement.  Serial structuring is a

violation of 31 U.S.C. § 5324(a)(3).  *Peterson*, 607 F.3d at 979.  *See United States v. Van Allen,*

524 F.3d 814, 820-21 (7th Cir. 2008).

*Structuring Activity by Brittingham*

52.        Based on the following, your declarant believes that Brittingham received the

proceeds of Banks's drug trafficking in the form of cash payments, to pay for Brittingham

building, repair, and improvement of the Defendant property, where Banks currently lives.

53.        Your declarant further believes that Brittingham structured the deposit of that

cash into his bank accounts to avoid detection by law enforcement of his receipt of criminal

proceeds. Because Brittingham had knowledge that the money was the proceeds of drug

trafficking, these transactions were also a violation of 18 U.S.C. § 1956(a)(1)(B)(ii), which

makes it a violation to make a transaction with criminally derived proceeds if the transaction is

designed in whole or in part to avoid a transaction reporting requirement under State or Federal

law.

54.        As stated above, Brittingham is the owner/operator of Skylark, which operates a

contracting/property management company and is headquartered at the Brittingham residence

located at 38283 Longridge Road.

55.        BB&T Bank account number ******2642 is a checking account held in the

name of "Skylark Management, Incorporated."  Brittingham signed as president of Skylark as

the authorized signor on the account.

56.        BB&T Bank account number ******4380 is a savings account held in the name

of Brittingham.  On August 1, 2011, the signature line was amended to include Brittingham and

Brittingham's wife as the authorized signors on the account.

57.        Based on the information outlined in this declaration, as well as my knowledge,

training, and experience, it is your declarant's belief that the cash deposited into BB&T account

number ******2642 (hereinafter referred to as "Skylark business account") and BB&T account

number ******4380 (hereinafter referred to as "Brittingham personal account")  were acquired

in amounts exceeding $10,000 and broken up into separate deposits in amounts less than

$10,001, or was deposited in a series of transactions in amounts less than $10,001, in an attempt

to evade triggering the CTR reporting requirement.

58.        From October 3, 2012 through November 8, 2013, a total of 24 individual

currency deposits totaling $178,814.00 were made into the Skylark business account.

Attachment D is a schedule of the cash deposits made during this period of time and shows the

structured manner in which the deposits were made.

59.        Of the 24 individual currency deposits that were made, nine of the deposits were

exactly $10,000;

- An amount between $5,000 and $10,000 was deposited 21 times;

- Between October 3, 2012 and February 1, 2014, nine $10,000.00 cash deposits were made;

- On November 27, 2012, two cash deposits were made on the same day, one into the Skylark business account and one into the Brittingham personal account;

- On July 11, 2012, $7,250.00 cash was deposited into the Skylark business account and "Moose Lodge Road" was written on the deposit slip memo space. On the following day, July 12, 2012, $8,750.00 cash was deposited into the Skylark business account and "Moose Lodge Road" was again written on the deposit slip memo space, indicating that these cash deposits represent payments from Banks for repairs, buildings, and improvements of the Defendant Property.

60.     Attachment A reflects instances where cash was repeatedly deposited in amounts just below the CTR reporting requirement threshold (i.e. between $7,000 and $10,000). Such activity is often referred to as "serial structuring" and is a violation of 31 U.S.C. § 5324(a)(3), because by consistently keeping cash deposits just below the CTR reporting requirement of $10,001, and not depositing more than $10,000 in any one banking day, the bank did not have a duty to file a CTR. Taking such steps demonstrates knowledge of the $10,000 reporting requirement threshold and a concerted effort to keep cash deposits just below that amount.

61.     The following is a summary of some of the cash deposits that were made from October 3, 2012 through February 1, 2013 into the Skylark business account and the Brittingham personal account:

| DATE | ACCOUNT | AMOUNT |
| --- | --- | --- |
| October 3, 2012 | *******4380 | $10,000 |
| October 10, 2012 | *******4380 | $10,000 |
| November 27, 2012 | *******4380 | $10,000 |
| November 27, 2012 | *******2642 | $10,000 |
| November 30, 2012 | *******2642 | $10,000 |
| December 28, 2012 | *******2642 | $10,000 |
| January 11, 2013 | *******2642 | $10,000 |
| January 22, 2013 | *******2642 | $5,000 |
| January 31, 2013 | *******2642 | $10,000 |
| February 1, 2013 | *******2642 | $10,000 |
| TOTAL | | $95,000 |

62.        When individuals conduct multiple cash deposits of this nature within such a short period of time, it is likely that the person had more than $10,000 in cash on hand at one time, and held back a portion of that cash when making deposits into the bank so that no one deposit exceeded $10,000 at one time.

*Search Warrant at Defendant Property*

63.        On April 11, 2014, agents executed a search warrant at the Defendant Property.

64.        Agents recovered the following evidence from the Defendant Property:

    a.        Two plastic bags containing 175.5 grams of cocaine in the kitchen area.

    b.        an operable digital scale containing suspected cocaine residue.

    c.        One plastic baggie containing 58.2 grams of cocaine in the garage area.

    d.        A hydraulic press with a square like steal mold also recovered from the garage.

    e.        An Acetone and a spray bottle, also recovered from the garage.

    f.        A loaded 45 caliber semi-automatic hand gun with an obliterated (grounded off) serial number containing 6 bullets in the night stands of a bedroom used by Banks.

    g.        A black pump shotgun that was unloaded in the closet of the same bedroom used by Banks.

    h.        A large sum of U.S. currency was also located throughout the residence.

65.        A field test of the cocaine described above was conducted with a Narcotics Identification Wipe (NIK), which yielded a positive result for the presence cocaine, a schedule II Controlled Dangerous Substance.

66.        The hydraulic press is a common type of drug paraphernalia used to press kilograms of cocaine.

67.        Banks has a prior felony conviction and is prohibited from possessing a handgun.

68.        Acetone is utilized as a cutting agent for powdered cocaine.

69.        As a result of the search warrant, Banks was arrested and charged with the following: possession with intent to distribute cocaine, possession of cocaine, two counts of drug paraphernalia, possess ammunition, being prohibited from possessing a regulated firearm, did knowingly possess a regulated firearm being a person convicted of a disqualify crime, did possess a regulated firearm after having been convicted of defined crimes, possess a firearm in relation to a drug trafficking crime, did knowingly obliterate the ID number on a firearm, possess a shotgun after being convicted of a disqualifying crime and did possess a shotgun after been convicted of several disqualifying violations. Banks was incarcerated at the Dorchester County Detention Center on a 500 thousand dollar bond, which he posted and was released.

*Search Warrant at Storage Unit*

70.        On April 12, 2014, a confidential source (CS) informed agents that Banks had traveled to a storage unit at 5441 Moose Lodge Road, Cambridge, Maryland.  The CS informed agents that Banks had traveled there several times in the previous days.

71.        The storage unit rental agreement was in the name of Banks's girlfriend.

72.        Banks's girlfriend stated that Banks used the storage unit and had asked her to rent it with cash.

73.        On April 15, 2014, agents executed a search warrant at the storage unit. Agents recovered from the storage unit (1) a silver colt 22 caliber handgun containing one bullet in the chamber and 6 bullets in the magazine; (2) one orange hydraulic press; and (3) $173,020.00 in cash.

**Conclusion**

74.        Accordingly there is probable cause and a reasonable belief that the Defendant

Property (a) is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it is real property

that was used or intended to be used, in any manner or part, to commit, or to facilitate the

commission, of a violation of the Controlled Substances Act punishable by more than on year's

imprisonment; (b) is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it

constitutes proceeds traceable to an exchange for a controlled substance; (c) is subject to

forfeiture pursuant to 18 U.S.C. 981(a)(1)(A) because it is real property involved in a

transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957; and (d) is

subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) because it is traceable to funds involved

in violations of 31 U.S.C. § 5324(a)(3) which makes it an offense to structure currency

transactions with a domestic financial institution for the purpose of evading the reporting

requirements of 31 U.S.C. § 5313, and the regulations promulgated thereunder.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. 1746
THAT THE FACTS LAID OUT ABOVE ARE ACCURATE, TRUE AND CORRECT TO
THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Special Agent Sean Fitzpatrick
Drug Enforcement Administration

## MEMORANDUM

DATE:              May 14, 2014

TO:                Kristine Cupp
                   U.S. Marshal Service

FROM:              Jennifer Stubbs
                   Paralegal
                   U.S. Attorney's Office - District of Maryland

RE:                **U.S. v. 5464 Moose Lodge Road, Cambridge, Maryland 21613**

                   **Civil Action No.**

                   **CATS ID** _____
                   **Agency Case No. -**

The United States has filed a forfeiture action against **5464 Moose Lodge Road, Cambridge, Maryland 21613.** A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at www.forfeiture.gov pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.

Attachment

1

**U.S. Department of Justice**
**United States Marshals Service**

**PROCESS RECEIPT AND RETURN**

| PLAINTIFF<br>**UNITED STATES OF AMERICA** | COURT CASE NUMBER |
|---|---|
| DEFENDANT<br>**5464 Moose Lodge Road, Cambridge, Maryland 21613** | TYPE OF PROCESS<br>Verified Complaint in Rem |

| SERVE ▸ AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | **Scott Brittingham** |
| | ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) |
| | **5464 Moose Lodge Road, Cambridge, Maryland 21613** |

| SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW: | |
|---|---|
| Jennifer Stubbs FSA Paralegal<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number of process to be served with this Form - 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

Arrest property. Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf of : | TELEPHONE NUMBER<br>410-209-4800 | DATE<br>5/14/14 |
|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated.<br>(Sign only first USM 285 if more than one USM 285 is submitted) | Total Process<br>No._____ | District of Origin<br>No._____ | District to Serve<br>No._____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

| Name and title of individual served (If not shown above). | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (complete only if different than shown above) | Date of Service / Time am pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:

| PRIOR EDITIONS MAY BE USED | SEND ORIGINAL + 2 COPIES to USMS. |
|---|---|

**1. CLERK OF COURT  2. USMS Record  3. Notice of Service  4. Billing Statement  5. Acknowledgment of Receipt**